Richard S. Busch (*Pro Hac Vice* Pending)
(Tennessee Bar # 14594)
E-Mail: rbusch@kingballow.com
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
(615) 259-3456 Facsimile: (615) 726-5417

Paul H. Duvall (SBN 73699)
E-Mail: pduvall@kingballow.com
KING & BALLOW
1999 Avenue of the Stars, Suite 1100
Century City, CA 90067
(424) 253-1255 Facsimile: (888) 688-0482

Mark L. Block (SBN 115457)
E-Mail: mblock@wargofrench.com
WARGO & FRENCH LLP
1888 Century Park East, Suite 1520
Los Angeles, CA 90067
(310) 853-6355 Facsimile: (310) 853-6333

Attorneys for Plaintiffs
ERIC BRADLEY SMITH, THOMAS ROGERS STEVENS, CHRISTOPHER JOHN THORN, GLEN GRAHAM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Eric Bradley Smith, Thomas Rogers Stevens, Christopher John Thorn, Glen Graham<br><br>    Plaintiffs,<br>vs.<br><br>Amanda Michelle Jiroux p/k/a Mandy Jiroux, VarCity Productions LLC, Kenneth Komisar d/b/a Laundry Room Productions, Notting Hill Music Management, Clifford Goilo, Lee Anna McCollum a/k/a Lee Anna James, InnerCat Music Group, LLC<br><br>    Defendants. | CASE # 2:16-CV-6523<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Complaint Filed: 08/30/2016<br>Trial Date: Not Set |

1

Eric Bradley Smith, Thomas Rogers Stevens, Christopher John Thorn, and Glen Graham (collectively, "Plaintiffs"), by their attorneys, for their Complaint against Amanda Michelle Jiroux p/k/a Mandy Jiroux, VarCity Productions LLC, Kenneth Komisar d/b/a Laundry Room Productions, Notting Hill Music Management, Clifford Goilo, Lee Anna McCollum a/k/a Lee Anna James, InnerCat Music Group, LLC (collectively, "Defendants"), for willful copyright infringement, allege, upon knowledge as to its own acts and upon information and belief as to the acts of others, as follows:

**JURISDICTION AND VENUE**

1. The jurisdiction of this Court with respect to the copyright infringement claims is based upon 28 U.S.C. §§ 1331 and 1338(a) in that the controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C. § 101 *et seq.*), which is within the exclusive jurisdiction of federal courts pursuant to 28 U.S.C. § 1331.

2. This Court has general personal jurisdiction over Defendants because they may be found within, and conduct systematic and continuous business in, California, as discussed fully herein.

3. This Court has specific personal jurisdiction over Defendants given the systematic and continuous business contacts of both corporate and individual Defendants in California with respect to the Infringing Works (defined below), evidenced by the connections discussed below, which, collectively, prove purposeful availment to California.

4. This Court has specific jurisdiction over any foreign Defendants given the Plaintiffs have filed suit in their home state against Defendants that have intentionally infringed Plaintiffs' intellectual property rights while knowing some Plaintiffs are located in California. Any foreign defendants also have offices in this District and/or helped create the Infringing Works while in this District.

5. Defendants have willfully infringed the copyright owned by Eric Bradley Smith ("Smith"), Christopher Thorn ("Thorn"), Rogers Stevens ("Stevens"), Glen Graham ("Graham") (collectively known as "Blind Melon"). Among other things, and as

explained more fully below:

6. Plaintiffs are the owners of the United States copyright in all rights, titles, and interests in the musical composition "No Rain." Registration Number PA0000710307 dated May 31, 1994.

7. Upon information and belief, Defendants created the sound recording and musical composition "Insane" (the "Infringing Works") in California.

8. Defendants offered the Infringing Works for sale in California, and/or authorized the same.

9. Defendants advertised the Infringing Works to California residents.

10. Defendants benefited substantially from the sale of a substantial number of copies of the Infringing Works in California.

11. Defendants licensed and/or authorized the licensing of the Infringing Works with California companies and for exploitation in California, including but not limited the licensing of the Infringing Works.

12. A substantial number of purchasers of the Infringing Works are California residents.

13. Defendants are, at a minimum, constructively aware of their continuous and substantial commercial interactions with California residents.

14. A coordinated plan existed among all Defendants to distribute the Infringing Works throughout the U.S., including California.

15. Defendants actively participated in and/or authorized the unauthorized and unlawful manufacture of the Infringing Works.

16. Defendants actively participated in the unauthorized and unlawful distribution of the Infringing Works to California residents.

17. Amanda Michelle Jiroux p/k/a Mandy Jiroux ("Jiroux") and VarCity Productions, LLC ("VarCity Productions") has made, and the other Defendants have authorized, organized, and promoted, performances of the Infringing Works numerous times in California.

18. Defendants, individually and collectively, have generated substantial revenue from the exploitation of the Infringing Works in California.

19. Defendants have knowingly and willfully exploited the Infringing Works in California, and the harm resulting from such infringement was knowingly directed at Plaintiffs, some of which are individuals who reside in this District.

20. California has a considerable interest in adjudicating disputes wherein California residents are the target of the harm resulting from exploitation of infringing works.

21. For those Defendants primarily based outside of the United States, given their willful and knowing role in creating the Infringing Works in California, offices in California, and exploitations of the Infringing Works in California, each could certainly reasonably anticipate being haled into a court in the U.S., and California specifically. Thus, jurisdiction could also be exercised constitutionally in this Court pursuant to Rule 4(k)(2).

22. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) because Defendants are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this Judicial District.

## COMPLAINT

23. This is an action for willful copyright infringement in which Jiroux, VarCity Productions, Clifford Goilo ("Goilo"), and Lee Anna James ("James"), the credited writers and owners of the copyrights of the Infringing Works, copied, and exploited, without authorization, the work of the world-famous band Blind Melon, falsely claiming to have had Blind Melon's support for use of the iconic hit "No Rain" in the Infringing Works. This is, therefore, a somewhat unique case where substantial and verbatim copying is not disputed, but Defendants will claim that they had a license to incorporate substantial portions of Blind Melon's most successful song "No Rain" into the Infringing Works. Defendants did not have such permission. Defendants were indeed crafty, first claiming that they had created a "cover" (a new performance and complete reproduction)

of the entirety of the musical composition "No Rain," also entitled "No Rain," which would not as a matter of law require Blind Melon's consent, and for which Defendants could obtain a "compulsory license." After several discussions and communications, however, it became clear that this was not a "cover" (new performance of the exact musical composition) of Plaintiffs' musical composition "No Rain," but was instead a completely new, derivative work, which had incorporated original and substantial portions of "No Rain," and for which Defendants required a license. Blind Melon has zealously prevented the creation of derivative works based on their smash-hit "No Rain" in order to preserve the purity and value of it. In the music industry, a song's value is diluted once it is licensed into a derivative work. There is usually only one opportunity to license a song to an international artist for a derivative work, and the value is greatly diminished, if not extinguished entirely, if it has been previously licensed for lesser works or to unknown artists. Despite Defendants having been told they did not have permission to use "No Rain" in the Infringing Works at least three times before release of the Infringing Works, Defendants proceeded to release the Infringing Works and have profited from the exploitation.

## NATURE OF THIS ACTION

## THE PARTIES

24. Plaintiff Smith, an individual, is a co-owner of the legal and equitable copyright in the musical composition "No Rain," which he co-wrote with the other members of Blind Melon. Smith is a resident of Los Angeles, California.

25. Plaintiff Thorn, an individual, is a co-owner of the legal and equitable copyright in the musical composition "No Rain," which he co-wrote with the other members of Blind Melon. Thorn is a resident of Los Angeles, California.

26. Plaintiff Stevens, an individual, is a co-owner of the legal and equitable copyright in the musical composition "No Rain," which he co-wrote with the other members of Blind Melon. Stevens is a resident of Swarthmore, Pennsylvania.

27. Plaintiff Graham, an individual, is a co-owner of the legal and equitable

copyright in the musical composition "No Rain," which he co-wrote with the other members of Blind Melon. Graham is a resident of Hillsborough, North Carolina.

28. Defendant Jiroux, an individual, is a writer, co-owner, and performer of the Infringing Works. Jiroux has offered for sale, and caused and authorized others to offer for sale, the Infringing Works in California. Jiroux has sold, licensed, authorized for sale, distribution and license, and benefited from the sale, distribution, and licensing of, the Infringing Works in California. Jiroux has performed the Infringing Works numerous times in California. Upon information and belief, Jiroux lived in Los Angeles while writing and recording the infringing composition and sound recording "Insane." Upon information and belief, Jiroux conducts systematic and continuous business in this District, and has generated substantial revenue from the exploitation of the Infringing Works in California. Upon further information and belief, Jiroux is a resident of Los Angeles California.

29. Defendant Kenneth Komisar (Komisar) is an individual who, upon information and belief, resides in Los Angeles California. Komisar is the manager of Jiroux, and is a member of Defendant, VarCity Productions. Komisar acted as the chief intermediary between Plaintiffs and Defendants. Upon information and belief, Komisar had a direct financial interest in the Infringing Works, as he was their chief financier. Komisar also exercised control over the creation and marketing of the Infringing Works. Upon further information and belief, Komisar knowingly induced, caused, and materially contributed to the creation, exploitation, and distribution of the Infringing Works. Upon further information and belief, Komisar entered into contracts with other Defendants, which authorized and caused widespread exploitation of the Infringing Works in the United States, and specifically in California, with a significant amount of the harm directed to California and its residents.

30. Defendant Clifford Goilo ("Goilo"), is the producer and co-author of the Infringing Works. Upon information and belief, it was Goilo's idea to create a derivative work based on Plaintiffs' composition, "No Rain." Upon information and belief, Goilo

and benefited from the sale and license of "Insane" in California. Upon information and belief, Goilo is a resident of Amsterdam, Netherlands, but spent a substantial amount of time in this District while working on the Infringing Works. Upon information and belief, Goilo conducts systematic and continuous business in this District, and has generated substantial revenue from the exploitation of the Infringing Works in California.

31. Defendant Lee Anna McCollum a/k/a Lee Anna James a/k/a LA James ("James") is a co-author of the Infringing Works. Upon Information and belief, James is a resident of Los Angeles California.

32. Defendant VarCity Productions is an Arizona limited liability company with its principal place of business at 14605 N Airport Dr. Ste 350 Scottsdale, AZ 85260. VarCity Productions claims ownership of the legal and equitable copyright in the sound recording of the Infringing Works. Upon information and belief, Jiroux is owner of VarCity Productions. Also upon information and belief, VarCity Productions conducts systematic and continuous business in this District, and has generated substantial revenue from the exploitation of the Infringing Works in California, including but not limited to the public performances of "Insane" in California. Upon further information and belief, VarCity Productions entered into contracts with other Defendants, which authorized and caused widespread exploitation of the Infringing Works in the United States, and specifically in California, with a significant amount of the harm directed to California and its residents.

33. Defendant Laundry Room Productions ("Laundry Room") is a California Corporation with principal place of business at 14526 Greenleaf St., Sherman Oaks, CA 91403. Upon information and belief Defendant Komisar is a majority owner of Laundry Room. Upon further information and belief, Laundry Room has entered into contracts with other Defendants which authorized, caused, and contributed to the widespread exploitation of the Infringing Works in the United States, and specifically in California, with a significant amount of the harm directed to California and its residents.

34. Defendant Notting Hill Music Group ("Notting Hill Music") is a United

Kingdom, entity with principal place of business at 150 Aldersgate Street, London, U.K. Upon information and belief, Notting Hill Music maintains an office in at 8961 Ste. 2E, West Hollywood, CA 90069. Upon information and belief, Notting Hill Music, by and through Defendant Komisar, has entered into contracts with other Defendants which authorized, caused, and contributed to the widespread exploitation of the Infringing Works in the United States, and specifically in California, with a significant amount of the harm directed to California and its residents.

35. Defendant InnerCat Music Group LLC ("InnerCat") is a Florida limited liability company with principal place of business at 5623 NW 74th Ave, Miami, Florida 33166. Upon information and belief, InnerCat is the distributor of the Infringing Works. Upon further information and belief, InnerCat has entered into contracts with the other Defendants which authorized, caused, and contributed to the widespread exploitation of the Infringing works in the United States, and specifically in California, with a significant amount of the harm directed to California and its residents.

## **FACTS RELEVANT TO COMPLAINT**

### **1. Background of Blind Melon and "No Rain"**

36. Plaintiffs Smith, Thorn, Stevens, Graham, along with vocalist Shannon Hoon, formed Blind Melon in March 1990. Blind Melon enjoyed critical and commercial success in the early 1990s with two chart-topping albums.

37. Blind Melon's biggest hit was "No Rain," which was released as a single and as a track on the band's self-titled 1992 album.

38. Both the song and the album charted very well both in the U.S. and internationally. The iconic and evergreen "No Rain" peaked at Number 1 on the U.S. *Billboard* Album Rock Tracks chart, Number 1 on the U.S. *Billboard* Modern Rock Tracks chart, Number 1 on the Canada Top Singles chart, and Number 4 on the U.S. *Billboard* Top 40 Mainstream chart, Number 8 on the Australia ARIA chart, and Number 20 on the U.S. *Billboard* Hot 100 chart.

39. The music video for "No Rain" also enjoyed commercial success and

featured the unforgettable tap-dancing "Bee Girl." The music video for "No Rain" earned a spot on VH1's "100 Greatest Music Videos of All Time" list. The music video for "No Rain" has over 9.3 million views on YouTube.

40. Because "No Rain" was Blind Melon's most successful hit, the band has always zealously guarded the licensing rights to the creation of derivative works based upon that track.

### 2. Komisar's Interactions with Blind Melon

41. Defendant Komisar was first introduced to Blind Melon through another one of his clients who rented recording studio space from Thorn. At that time, in early 2016, Thorn was interested in retaining Komisar to manage Sonny Boy Thorn, another of Thorn's bands.

42. Thorn introduced Komisar to Blind Melon's manager, Keith Isola ("Isola"). Komisar at first approached Isola about Jiroux, whom he reported had created a demo covering Blind Melon's "No Rain." At that time, Komisar also reported that this cover would also be entitled "No Rain."

43. Specifically, on or around May 14, 2016, Komisar sent an email to Isola and Thorn, which discussed Jiroux's "hopes of coming together on this new version" of Blind Melon's "No Rain." In that email, Komisar admitted that a demo version of the work had already been created and attached the lyrics that had already been written, which, as stated, was then also titled "No Rain."

44. In that same May 14, 2016 email, Komisar detailed that he and the other Defendants had already invested time and money into the new "No Rain," and Komisar admitted he had already procured on-air time and other marketing services from iHeart Radio for the Infringing Works. Komisar also admitted he had already reached out to directors to make a music video for the Infringing Works. Komisar and the Defendants had taken all of these actions before any communications occurred between Komisar, Isola, and Thorn.

45. On or around May 16, 2016, Komisar emailed Isola again. This time Komisar said that he was in negotiations to hire Phil Tan as the mixer for the Infringing Works.

46. In this May 16, 2016 email, Komisar attached a sound recording of the Infringing Works, and admitted that it was created, in part, by sampling (i.e. directly lifting from the sound recording) from the Master Copy of Blind Melon's original recording of "No Rain."

47. The May 16, 2016 email closed with Komisar's admission that he still needed to "sort out" Blind Melon's approval, as well as the how the publishing rights would be divided between Blind Melon and the Defendants.

48. On or around that same date, Isola consulted with Smith, who owns the controlling interest in "No Rain," to determine if Smith and Blind Melon approved of the creation of what was believed to be a "cover." Smith, having not yet heard the Infringing Works, believed the new work (also then entitled "No Rain") was simply a cover, and thus responded that Jiroux did not need permission to simply "cover" the work so long as it was properly registered with the publisher.

49. On or around May 17, 2016, Isola relayed Smith's response to Komisar—i.e. that Smith did not have a problem with Jiroux "cover[ing]" "No Rain," but Komisar would "have to go through Sony ATV," and register with them, since Sony/ATV administers the publishing for "No Rain" for Plaintiffs.

50. On or around May 18, 2016, one day later, however, Isola emailed Komisar informing him that after further correspondence with the members of Blind Melon, they were not granting permission because they were not "interested in supporting a co-write share or splitting the publishing" for the Infringing Works. Blind Melon made this decision after realizing that the Defendants were not covering "No Rain," but were creating a completely new musical composition, albeit a derivative that incorporated important parts of the original "No Rain" in it.

51. On or around June 15, 2016, apparently ignoring the May 18 correspondence, and despite never receiving permission to create a derivative work, Komisar emailed Isola what he called the "final master mix" of the Infringing Works, now entitled "Insane," so that Blind Melon could approve. In this same email, Komisar included proposed language that would govern the terms of the exploitation of "Insane." Further, Komisar admitted that the language would "allow us all to participate and make it so we can promote 'Insane' as a new derivative work."

52. On or around June 23, 2016, Komisar, Isola, and Jennifer Cary ("Cary"), who often consults Blind Melon and Isola regarding royalty administration for Blind Melon's catalog, had a conference call discussing whether or not Komisar and Jiroux had permission to use "No Rain."

53. On this June 23, 2016 call, Komisar admitted he had already "spent a lot of money" on a promotional campaign for the song, and that he hoped it would bring the song to a new generation of listeners. Both Cary and Isola made it very clear that Smith was "not inclined" to license the use of "No Rain" at that time. Both Cary and Isola discussed with Komisar that they and Smith were concerned that the value of "No Rain" could be adversely affected by the proposed use, given the associated risk of conferring the song to a relatively unknown artist who may not be commercially accepted. Cary and Isola promised to discuss the use further with Smith, but also made it clear that they were not granting permission to use "No Rain" at that time.

54. The next day, despite receiving a flat rejection, Komisar emailed Cary and Isola thanking them for their "support" and said that "obviously the next step is in your corner as far as connecting with [Smith]." In this email, Komisar attached a proposed treatment for a music video of the Infringing Work hoping that a cameo appearance for Smith in the music video would sway his opinion.

55. Sensing that Komisar was either purposefully mischaracterizing the conversation, or did not understand that Jiroux did not have permission to use "No Rain," Isola responded in an email re-using Komisar's chosen language (i.e.,

"support") stating explicitly that Blind Melon had "respectfully chosen *not to support* the track Insane at this time." Isola thanked Komisar for his interest and stated that he hoped the two could work on other projects in the future.

56. Despite at that time having been told twice that he did not have permission to use the work, on or around July 12, 2016, Komisar nonetheless contacted Dag Sandsmark, who is Blind Melon's authorized Clearance Representative at EMI and Sony/ATV for Blind Melon's catalog, and the party therefore authorized to grant licenses on Plaintiff's behalf. In an email, Komisar requested from Sandsmark clearance for the use of "No Rain" in the Infringing Works.

57. On the same day, Sandsmark followed up with both Smith and Isola to determine if Smith and Blind Melon approved the use of "No Rain." Also that day, Isola informed Sandsmark the band had already informed Komisar that Blind Melon did not support the use of "No Rain" in the Infringing Works.

58. On or around July 13, 2016, Sandsmark informed Komisar—now for a third time—that neither he nor Jiroux had permission to use "No Rain" in any way. The same day, Komisar replied to Sandsmark that he found that "surprising." In this email, Komisar explained his position by attaching the email chain between himself and Isola, which included the initial responses, including the May 18 email about not wanting to split publishing *if* Blind Melon would go on to give permission to create the derivative work. However, Komisar did not mention the June 23 phone call and the June 24 email wherein Isola and Carey had both expressly informed Komisar that he did not have permission to use "No Rain."

59. In response, Sandsmark reiterated his and Blind Melon's position that there was no license in place for Defendants' use of "No Rain" in the Infringing Works "Insane."

### 3. Release of the Infringing Works

60. Despite having three times been denied permission to utilize the composition of "No Rain," Defendants proceeded to release the Infringing Works on or around August

8, 2016.

61. Upon information and belief, Defendant InnerCat has been retained by some or all of the other Defendants to manage the digital distribution of the Infringing Works. Upon further information and belief, InnerCat has distributed the Infringing Works to YouTube, digital retailers, and streaming services such as iTunes, Spotify, Pandora, Google Play, Slacker, and other music distribution outlets.

62. Upon information and belief, Defendant Jiroux continues to exploit the Infringing Works in connection with her promotional campaigns for other areas of her career such as her dance instructional videos.

63. Upon information and belief, Defendants have plans to include the Infringing Works on future albums and/or EPs, as well as other formats.

64. Indeed, to drum up support for "Insane," and to lend credibility to it, Jiroux has made numerous public statements referencing Blind Melon's "No Rain," and falsely stating that Blind Melon had given her, and her alone, permission to use portions of it in "Insane." Specifically, in an interview with iHeart radio, Jiroux stated that she and her producer, "put a really cool twist on [Blind Melon's "No Rain"] with really cool beats," and a "summer time vibe." Jiroux also claimed in this interview, "I [Jiroux] was in the studio with one of my producers, and we were thinking of what we could do that's super cool and different, and single material. So, he picked up a guitar and just played that classic 'No Rain' guitar riff, and I was like, 'Oh, my gosh, I love that song.' Everyone else in the studio felt the same, and then I just kind of said where I think we should take it, and, hopefully the Blind Melon guys would let us use it. And it turned out that they loved the song so much I'm the only artist that they've ever let use that classic hook. It was super natural, super easy, and that's when you know it's right. It felt really great, and I just felt very honored, because they were so huge in [sic] classic in the nineties, so it was really just a big honor."

65. This publicity and unauthorized use has done significant damage to "No Rain" and has severely damaged the copyright, by now essentially eliminating any

13

prospect that a major artist will actually license it for a major release. Blind Melon's vigilant, decades long protection of "No Rain," referenced by Jiroux herself in her public statement above, was cavalierly and willfully disregarded by Defendants.

66. On our around August 18, 2016, immediately after discovering Defendants had publically released the Infringing Works, Plaintiffs, by and through counsel, sent a cease and desist letter, and notice of infringement, to Defendant Komisar, explaining that he, Jiroux, and the other Defendants did not have any permission to use "No Rain" in the Infringing Works. That letter detailed that Blind Melon had never granted a license to use "No Rain" in the Infringing Works, either expressly or implicitly, and demanded that the Defendants immediately cease distribution of the Infringing Works, and publicly state that "No Rain" had not been licensed for use in the Infringing Works.

67. On or around August 19, 2016, counsel for Plaintiffs sent another letter to Defendant Komisar explaining that the unlicensed use of "No Rain" had caused serious injury to the market value of "No Rain," and that, in addition to ceasing of the infringing activities, Blind Melon would require, among other things, financial restitution for the injury to the Market Value of "No Rain."

68. On or around August 22, 2016, counsel for Defendants Jiroux and VarCity Productions responded to the above-mentioned letters, claiming that Defendants had a implied license to use of "No Rain" in the Infringing Works as manifested in emails and oral communications. This letter mischaracterized the email communications between Komisar and Isola and conveniently omitted the fact that Defendants had been told on no less than three occasions that Blind Melon and/or its licensing agent at EMI and Sony/ATV had denied Defendants any license to use "No Rain" in the Infringing Works. This letter also ignored the fact that Defendants had created the Infringing Works and began marketing them even before contacting Plaintiffs to request permission to use "No Rain." Counsel for Defendants refused to take any action in response to the aforementioned letters from Plaintiffs' counsel.

69. As explained in detail above, Defendants had at no time either an express or

implied license to use "No Rain" in the Infringing Works. In fact, the Infringing Works were created prior to any communications with Blind Melon or its representatives. Neither Blind Melon nor any of its representatives commissioned the creation of the Infringing Works. Further, neither Blind Melon nor any of its representatives agreed to License any portion of "No Rain" for use in the Infringing Works. Neither Blind Melon nor any of its representatives ever gave any indication by their words or actions that Komisar, Jiroux, and the other Defendants had any permission to create a derivative work encompassing "No Rain." In fact, Blind Melon and its representatives expressly stated at least three times that Komisar, Jiroux, and the other Defendants did *not* have Blind Melon's permission or support for the use of "No Rain" in the Infringing Works.

### 4. Striking Similarity Between the Works

70. Even absent the admissions from Defendants both to the media and to Plaintiffs that "Insane" is a derivative work of "No Rain," the similarities between the two works rises to the unusual level of striking similarity as would be readily apparent to the ordinary observer.

71. In order to write and record the Infringing Works, "Insane," Defendants intentionally and unlawfully copied the unique and original elements from "No Rain." The misappropriated portions of "No Rain" run throughout the entirety of "Insane."

72. As explained below, in all cases, these elements of each of these songs are both quantitatively and qualitatively important to both the infringed and infringing compositions and sound recordings, and are instantly recognizable to the ordinary observer.

73. "No Rain" and the Infringing Works are substantially and strikingly similar both extrinsically and intrinsically, and thus clearly not the product of independent creation.

74. The Infringing Works begin, unmistakably, with the iconic and instantly recognizable guitar riff featured throughout "No Rain."

75. The Infringing Works lift heavily from the lyrics of "No Rain" at times even

word-for-word.

76. Throughout the entire composition, "Insane" copies and follows the underlying chord progression of "No Rain."

77. Further, "Insane" borrows note-for-note the melody of "No Rain."

## CAUSES OF ACTION

## COUNT I

**Direct, Contributory, and Vicarious Copyright Infringement of "No Rain" By "Insane"**

78. Plaintiffs repeat and re-allege each of the foregoing paragraphs, as though fully set forth herein.

79. Defendants had access to the widely disseminated "No Rain" because of the large-scale commercial success and wide dissemination of "No Rain" (as discussed above). Also, Defendants have repeatedly admitted both in interviews and to Plaintiffs, that they had access to "No Rain." Furthermore, "No Rain" and the Infringing Works are strikingly similar, and thus, access is presumed.

80. Defendants' unauthorized reproduction, distribution, public performance, display, and creation of a derivative work, "Insane," infringes Plaintiffs' exclusive rights in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*.

81. Defendants repeatedly sought and were denied permission to copy or interpolate any portion of "No Rain" into the Infringing Works. All of the elements of "No Rain" copied by the Infringing Works are original to "No Rain."

82. Defendants' conduct has at all times been knowing, willful, and with complete disregard to Plaintiffs' rights and objections.

83. As a proximate cause of Defendants' wrongful conduct, Plaintiffs have been irreparably harmed.

84. The Infringing Works copy quantitatively and qualitatively distinct, important, and recognizable portions of "No Rain." This copying satisfies both the intrinsic and extrinsic tests to establish copyright infringement.

85. From the date of the creation of the infringing composition and sound recording "Insane," all Defendants have infringed Plaintiffs' copyright interest in "No Rain" including: (a) by substantially copying and publicly performing, or authorizing the copying and public performances, including publicly performing "Insane" at radio, live concerts, personal appearances, and on video, television, and otherwise; (b) by authorizing the reproduction, distribution, and sale of the records and digital downloads through the execution of licenses, and/or actually selling, manufacturing, and/or distributing "Insane" through various sources; (c) by substantially copying and the related marketing and promotion of the sale of the records, videos, tickets to concerts and other performances, and other merchandise; (d) by publically promoting the Infringing Works in promotional interviews, including online features, print interviews, television appearances, social media pages, and other media outlets; and (e) by participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of "No Rain" in and as part of the Infringing Works packaged in a variety of configurations and digital downloads, mixes and versions, and performed in a variety of ways including radio, concerts, personal appearances, video, television, and/or otherwise.

86. Plaintiffs have received no copyright ownership interests in, and for any of the exploitations of, "Insane" or any of the works associated with the Infringing Works.

87. The infringement by Defendants has been, and continues to be, willful and knowing.

88. Defendants have reproduced and/or distributed and continue to manufacture, reproduce and distribute large numbers of copies of the Infringing Works, which violate Plaintiffs' copyrights and are at issue in this lawsuit. Defendants have not only have marketed and exploited the songs that are at issue in this lawsuit, but also have granted or caused to be granted to various parties, licenses to reproduce, sample and/or distribute the songs that are in violation of Plaintiffs' copyrights.

89. With knowledge of the infringement, Defendants have induced, caused, or

materially contributed to the infringing conduct of others, such that they should be found to be contributorily liable.

90. Defendants had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants should be found to be vicariously liable.

91. The infringement is continuing as the Infringing Works continue to be sold and continues to be licensed for sale, in downloads, ringtones, mastertones, and other exploitations by Defendants, or their agents.

92. As a direct and proximate result of the conduct of Defendants, Plaintiffs have suffered actual damages including the injury to the market value of their copyright in "No Rain," lost profits, lost opportunities, loss of goodwill, loss of reputation, and lost publicity.

93. Pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to damages, including the substantial profits of Defendants, as will be proven at trial.

94. Plaintiffs are entitled to Defendants' profits relating to foreign sales of copies of the Infringing Works that were manufactured, distributed, or otherwise infringed domestically.

95. In the alternative, pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum amount of statutory damages for each act of willful copyright infringement.

96. While Plaintiffs seek an injunction enjoining any further distribution of the Infringing Works, and an Order seeking an impoundment of any and all copies of the Infringing Works, to the extent that relief is denied, Plaintiffs request an Order directing that all revenue associated with the Infringing Works be paid to them.

97. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

98. Unless enjoined by this Court, Defendants' conduct is causing and will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in monetary terms. Plaintiffs have no adequate remedy at law. Pursuant to 17

U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the Infringing Works including all Infringing Works, or, in the alternative, a continuing royalty following judgment in an amount to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants and for the following relief:

A. A declaration that Defendants have willfully infringed Plaintiffs' copyrighted works in violation of the Copyright Act;

B. A declaration that Defendants are directly, vicariously and/or contributorily liable for copyright infringement, as applicable;

C. A permanent injunction requiring Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiffs' rights protected by the Copyright Act;

D. If a permanent injunction is not granted to prevent the continued infringement of Plaintiffs' rights under the Copyright Act, then pursuant to precedent, Plaintiffs respectfully request to be compensated by receiving all revenue associated with all exploitations of the Infringing Works, commencing from the date of judgment and for all amounts not taken into consideration in the judgment;

E. An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, inclusive of the injury to the market value of their copyright in "No Rain," and the profits of Defendants as will be proven at trial, including a finding that Defendants are "practical partners" of each other and thus jointly and severally liable for the profits of each other, or, in the alternative, the maximum amount of statutory damages pursuant to 17 U.S.C. § 504(c) for each act of willful infringement;

F. An award of attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and under other applicable law;

G. For pre-judgment and post-judgment interest according to law, as applicable; and

H. For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), and otherwise, Plaintiffs respectfully demand a trial by jury.

Dated: August 30, 2016

By: /s/ Paul H. Duvall
Richard S. Busch (*pro hac vice* pending)
Paul H. Duvall (SBN 73699)
E-Mail: pduvall@kingballow.com
KING & BALLOW
1999 Avenue of the Stars, Suite 1100
Century City, California 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482

Mark L. Block (SBN 115457)
E-Mail: mblock@wargofrench.com
WARGO & FRENCH LLP
1888 Century Park East; Suite 1520
Los Angeles, CA 90067
Telephone: (310) 853-6355
Facsimile: (310) 853-6333